IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:07-cr-0176-WKW |
| | ) | |
| JERRY ALAN PENTON | ) | |

**<u>ORDER</u>**

Before the court is the government's appeal of the Magistrate Judge's order (Doc. # 14) releasing the defendant and motion (Doc. # 17) for revocation of the release order pursuant to 18 U.S.C. § 3145(a)(1). The court previously granted the government's request for an immediate stay of the release order pending an evidentiary hearing. The hearing was held on September 18, 2007, at which the parties presented additional evidence. Based upon the consideration of all the evidence now before the court and an independent and de novo review of the record, it is ORDERED that the motion to revoke (Doc. # 17) is GRANTED, the release order of the Magistrate Judge (Doc. # 14) is REVOKED, and the defendant shall be held in custody pending trial.

The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. Because a defendant is presumed innocent before trial, § 3142 places the burden on the government to establish grounds for detention of the defendant before trial. However, subsection (e) creates a rebuttable presumption against release when there is probable cause to believe the defendant committed certain crimes, including crimes involving a minor victim under 18 U.S.C. § 2252A(a)(2). Because the indictment (Doc. # 1) charges the defendant with a crime involving a minor victim under § 2252A(a)(2), the presumption is triggered. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990) (stating a grand jury indictment is sufficient to provide the necessary probable cause to raise the rebuttable presumption). The presumption is that "no condition or combination

of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). The presumption is construed in the disjunctive so that "a finding of either danger to the community *or* risk of flight will be sufficient to detain the defendant pending trial." *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988) (quoting *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985) (internal quotation marks omitted)).

The Eleventh Circuit describes the presumption and burdens as follows:

> Once the statutory presumptions are raised, the defendant carries the burden of production to come forward with evidence to rebut the presumptions. The defendant's obligation to come forward with evidence does not shift to the defendant the government's burden of persuasion. . . . Even if this evidence is sufficient to rebut the statutory presumption, the presumption "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relative to factors listed in section 3142(g)."

*Quartermaine*, 913 F.2d at 916 (quoting *King*, 849 F.2d at 488). The four statutory factors to be considered are: (1) the nature and circumstances of the charged offenses, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The facts relied on to determine that no condition or combination of conditions exist that reasonably assure the safety of the community must be supported by clear and convincing evidence. *Id.* § 3142(f)(2)(B). However, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [pre-trial detention] hearing." 18 U.S.C. § 3142(f)(2).

The Magistrate Judge found, and this court strongly agrees, that the defendant is a danger to the safety of the community. (Detention Hr'g Tr. vol. 1, at 72, Aug. 24, 2007.) Upon the evidence before him, the Magistrate Judge ordered home confinement at the home of the defendant's parents,

24 hour supervision by his parents, no contact with children other than his own (and then only under state court ordered restrictions), no cell phone or computer use, and electronic monitoring. The only significant evidence proffered by the defendant to rebut the government's evidence is that his parents have agreed to supervise him and obey the court's restrictions while he is under confinement at their home and that "sometimes" there is a "pretty good" cell phone signal at their home. (Mot. Hr'g, Sept. 18, 2007.)

Despite the Magistrate Judge's strong conditions of release, on the evidence now before it, the court finds even this stringent combination of restrictions to be inadequate to overcome the presumption established by § 3142(e) in view of the clear finding that the defendant poses a danger to the community. Numerous factors contribute to this inadequacy. Under the conditions present, monitoring itself may well be ineffective. First, the home in question is located in a rural area without reliable cell phone service, which operates against the use of sophisticated GPS monitoring because it is tied to the cell phone service. Second, the traditional ankle monitor depends on a land line phone to effectively monitor the defendant. Should land line phone service be lost, either intentionally[1] or otherwise, monitoring would instantly cease and the whereabouts of the defendant would be unknown. Third, the monitor obviously does not monitor the parents of the defendant, or their comings and goings so that it is impossible to confirm if he is being closely supervised on site. Fourth, the monitor does not record the visits of other persons, including children, to the premises, which is of particular concern under the facts of this case. Fifth, and most importantly, the monitor does not record whether the defendant has access to, or uses, a computer or cell phone with internet access.

---

[1] As will be seen, the court is concerned about the intentions of the defendant.

Upon the defendant's indictment of a crime under 18 U.S.C. § 2252A(a)(2), a rebuttable statutory presumption arose that no condition or combination of conditions will reasonably assure the safety of the community. As noted, the evidence presented by the defendant is insufficient to overcome this presumption. Even had the defendant sufficiently rebutted this presumption, however, this court remains convinced that upon consideration of the following four statutory factors, along with the presumption which remains in the case as an evidentiary finding, the court must order the detention of the defendant prior to his trial.

### A.   *First Factor - Nature and Circumstances of the Charged Offense*

In considering the nature and circumstances of the charged offense, the court is expressly directed by statute to take into account whether the offense involves minor victims. 18 U.S.C. § 3142(g)(1). The defendant faces three charges in this court related to child pornography, one of which raises the rebuttable presumption that no conditions can reasonably assure the safety of the community. Child pornography is an especially heinous crime because it "takes advantage of a particularly vulnerable segment of society, children." *United States v. Schenberger*, ___ F. Supp. 2d ___, No. 07-2077, 2007 WL 2230182, at *4 (D.N.J. July 27, 2007). Furthermore, "the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" *United States v. MacEwan*, 445 F.3d 237, 250 (3d Cir. 2006) (quoting Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996)); *see also United States v. Nicholson*, No. CR-06-750, 2006 U.S. Dist. LEXIS 67387, at *7 (D. Ariz. Sept. 19, 2006) ("There can be no doubt that those who consume and distribute this material encourage its production, as there can be no doubt that the production of such materials involves the abuse of children.").

In addition to the heinousness of the charged crime, this does not appear to be an isolated click of the mouse or inadvertent reception of a small number of images. *See Schenberger*, 2007 WL 2230182, at *4. Rather, the defendant is charged with possessing not just hundreds but nearly two-thousand suspected images of child pornography. The sheer volume of the imagery speaks for itself, but the allegations of the imagery being used in conjunction with overt acts of child molestation further heightens the seriousness of the offense and the potential danger to the community.[2]

### B.     Second Factor - Weight of the Evidence

It is often stated that the weight of the evidence is least important among the four statutory factors. *See, e.g., United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Nicholson*, 2006 U.S. Dist. LEXIS 67387, at *7. Nevertheless, it must be considered, and in this case the court views the weight of the evidence against the defendant as very strong. First, at a minimum, sufficient evidence exists such that the defendant has been indicted by a grand jury for various crimes involving child pornography. *See United States v. Norris*, 188 Fed. Appx. 822, 830 (11th Cir. 2006) (considering the grand jury indictment under the weight of the evidence factor analysis); *Falcon*, 2007 U.S. Dist. LEXIS 44358, at *6 (same). Second, the investigation, which is ongoing, has already revealed approximately 1,800 suspected images of child pornography with over 100 known victims and at least one suspected video on the defendant's computers. Third, there is evidence that the defendant attempted to wipe the hard drive of a new laptop clean as federal agents arrived to arrest him at a public library, thereby possibly destroying even more evidence that may otherwise have been seized.

---

[2] This defendant also faces at least two pending charges in state court for sexual abuse of his minor female nieces, allegedly using child pornography during one of those attacks. (Detention Hr'g Tr. vol. 1, at 8-10.)

C.     *Third Factor - History and Characteristics of the Defendant*

The statute setting forth the third factor concerning the defendant's history and characteristics includes many sub-factors, such as the defendant's character, mental condition, family ties, employment, past conduct, past drug or alcohol abuse, and criminal history. *See* 18 U.S.C. § 3142(g)(3)(A). The defendant here has resided in the community for about six years and was employed until his arrest for the present offense. He is married and has three children between the ages of ten and fifteen. He has no known history of substance abuse and the pending state molestation charges are his only prior criminal offenses. While these few aspects of the defendant's history may weigh favorably for his pretrial release, they are far outweighed by many other troubling instances in the defendant's history that indicate dangerous characteristics.

For example, the court is deeply concerned that the defendant may be leading a clandestine and potentially dangerous electronic double-life. First, his wife and oldest child deny any knowledge whatsoever of the child pornography located on more than one computer in the home. He also describes his marriage status as being single on his MySpace page despite being married. If he successfully concealed these computer activities from his wife and children while living in the same house with them, it is not a stretch of the imagination to believe he could do the same while living under home confinement with his parents. Second, even though ten computers were seized from his home and were known to him to be in the hands of the government, he later acquired the use of yet another computer, with sophisticated encryption software, which he used at a public library with wireless internet access. Encrypted images obtained from this laptop have yet to be accessed and analyzed by law enforcement agencies. Third, and most notably, there is credible evidence of the defendant taunting the authorities electronically, specifically with respect to their criminal

6

investigation of him. The defendant's MySpace page URL is http://www.myspace.com/agentbadcock. The domain name "agentbadcock.com" is registered to Jerry A. Penton at a private domain registration service located in California. The "agentbadcock.com" website contains the following:

> Hello Alphabet boys (FBI) glad you could finally find this site. I'm sure you haven't been looking too long, nontheless [sic], this site will do you no good in your investigation. So I do hope you had a good time tracking down this site with the leads that I left behind for you. You see, I have learned that if you get your opponent to waste time on something that doesn't matter, they are not getting lucky *and finding something that could matter. So I'll keep throwing you some bones, letting you fetch them according to your criminal playbook.* So next time you are following up on a lead that makes you think you are about to hit paydirt, you'll be thinking in the back of you mind, "Geez, I wonder if he is setting us up again?" TTFN alphabet boys.
>
> Contact Information
>
> Email: alphabetboybonethrower@agentbadcock.com
>
> Address: *Central Alabama*

Government's Ex. 1 (emphasis added). It should be noted that Clanton, the defendant's place of residence, is squarely located in "Central Alabama."[3] While it may be ultimately impossible to tie this website and its message taunting law enforcement directly to the defendant, at this stage of the proceedings it gives one pause to release him – especially in light of the other factors listed above.

The court is also troubled by the fact that the defendant was using a computer in a library when arrested, that he was seen executing several key strokes after he saw law enforcement but before he could be arrested, that it now appears that the computer in question has very sophisticated encryption software and encrypted images and files, and that it appears that some of the data has

---

[3] Additionally, the domain name "runningredbones.com" is registered to Jerry A. Penton at his admitted address on a county road in Clanton, Alabama.

been "scrubbed" or electronically shredded. This is particularly serious evidence in light of the existence of over 1,800 suspected images of child pornography with over 100 known victims previously located on other computers owned by the defendant. The defendant was also found with a device with an external antenna that allows for a greater range of wireless internet access from various locations, including while driving in a car.

Moreover, the defendant is charged in state court with sexual abuse of two minor nieces, one of whom allegedly confirmed the defendant was using child pornography on the computer while abusing her. As the government points out, there have been no contrary facts of these accounts made by the defendant. These charges have resulted in the defendant being restricted to only supervised visitation with his own children. Although the state molestation charges are not before this court, they certainly inform the court of the defendant's potential for dangerousness and therefore weigh heavily against him. *See Quatermaine*, 913 F.2d at 917 (finding former arrests for domestic violence as probative evidence of a tendency of violence and a dangerousness toward others). The court gives these alleged abusive actions charged in state court particular weight since the statute specifically compels the consideration of "whether, at the time of the current offense or arrest, the person was . . . on other release pending trial . . . for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B). Therefore, upon weighing the various sub-factors as provided by the statute, the court considers the third factor to weigh in favor of detention.

D.      *Fourth Factor - Nature and Seriousness of the Danger to the Community*

The serious and dangerous nature of child pornography is well established. That danger is further enhanced by the state charges of actual child molestation. The prevalence of the internet and the nature of the alleged crimes lead this court to believe there are no conditions of release that can

reasonably assure the safety of the community. As another district court has noted:

> It is not possible to formulate conditions of release which would completely deprive such a defendant of the ability to possess or attempt to possess additional child pornography, "or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals."

*United States v. Falcon*, No. 06-60080-01, 2007 U.S. Dist. LEXIS 44358, at *15-16 (W.D. La. June 18, 2007) (quoting *United States v. Reiner*, 468 F. Supp. 2d 393, 397 (E.D.N.Y. 2006)).

The defendant has shown himself to be technically sophisticated through his use of a shredding program on his hard drive, the use of an encryption program, the creation of his own website, and his possession of a GPS-type external antenna enhancing access to the internet. Furthermore, his website taunts law enforcement agents and displays an express intent to mislead them. The combination of these reasons convince the court that it would be nearly impossible for a home monitoring program to completely prohibit his access to the internet and reasonably assure the safety of the community. *See Schenberger*, 2007 WL 2230182, at *6 (noting how difficult it is to enforce a defendant's agreement not to access a computer due to the ubiquitous presence of the internet).

Finally, after visiting the proposed home confinement site and investigating the potential for successful electronic monitoring there, the assigned probation officers, upon whom the court relies for recommendations, advised the court against release. The court takes the advice of the probation department for what it is, a recommendation. Nevertheless, taken together with the other evidence and inferences, the court will heed that advice.

Because he failed to overcome the presumption of § 3143(e), and because the government

presented clear and convincing evidence that he constitutes a danger to the community, it is ORDERED that the defendant will remain in detention pending trial of this action.

DONE this 24th day of September, 2007.

                                      /s/  W. Keith Watkins
                              UNITED STATES DISTRICT JUDGE